[Crim. No. 5070.   First Dist., Div. Three.   June 9, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOE W. PERRY, Defendant and Appellant.

Brian D. McGinty, under appointment by the District Court of Appeal, and Paul R. De Lay for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jennifer L. Bain, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant was found guilty of robbery and violation of section 10851 of the Vehicle Code (taking of an

automobile without the consent of the owner). He appeals. He pleaded guilty to four felonies committed at another time, for which he was sentenced to the state prison. The appeal does not affect the judgment on the four separate crimes.

### Facts of the robbery

The case against appellant is exceptionally strong. He was identified as one of three men who entered a doughnut shop in Vallejo and robbed both waitresses and customers. One customer and two waitresses not only identified him but testified that he was armed with a knife. Witness Mitchell, who had been charged with the robbery originally, was discharged as a defendant in order to testify for the prosecution. He, too, identified appellant as a participant in the robbery. There were two witnesses who, although they did not see the robbery, were effective in rebutting appellant's claim of alibi (that he was home sick on the night of the robbery), by testifying that they saw him in various situations related to other persons whose guilt of the robbery is admitted. Witness Boswell saw appellant with them in the vicinity of a burning automobile, which was otherwise identified as the one used in the robbery and as having been purloined. Witness Courts saw appellant in the company of the admitted robbers, about two hours after the crime, a few blocks away from the burning automobile.

When appellant was arrested, there was in the vehicle which he was driving a loaded .45 pistol, which one of the robbers, Donelson, identified as the one used in the hold-up. Appellant testified that so far as he could recall he was at home on the night of the robbery. All of the other men, except Mitchell, who had been charged with the robbery, pleaded guilty and testified that appellant was not with them on the night of the robbery. Appellant's counsel on appeal places no reliance on the testimony of the witnesses who were supposed to support appellant's defense. Indeed, he regards their testimony as incredible. It is his position that their testimony should not have been presented at all, because of circumstances described below.

### Trial counsel's request to withdraw

At two points in the proceedings in the court below, Jack Burstein, court-appointed counsel for appellant, asked the court to be relieved of the duty of representing him. The first occasion was that of commencement of the trial. Prior to empaneling of the jury, Mr. Burstein told the court that there was a conflict of interest in his representing appellant, on the

one hand, and two of his codefendants, Bobo Augusta and James Donelson, on the other. He stated that the conflict had become known to him only the day before, in a conference with his clients. He asked that new counsel be appointed, either for appellant or for the other two, and that a continuance of one week be granted so that new counsel could prepare himself. Mr. Burstein said that there might be a breach of confidential relationships in representing all three. The court was of the opinion that the defendants must have concealed any conflict until trial was imminent. There is no evidence to support this conclusion, however; all that had been told the court was that counsel had discovered the conflict a day earlier. The court asked appellant if he wished new counsel and he replied that he did. Augusta and Donelson were satisfied to be represented by Burstein. The district attorney announced that he had 30 witnesses under subpoena for the two trials, namely, the robbery and section 10851 trial, and the assault trial. Appellant was asked if he would waive the statutory time and he replied that he would not.

The indictment having been filed August 27, 1964, the 60-day limitation contained in section 1382 of the Penal Code had not expired on the day of commencement of the trial, which was October 6, 1964, nor would it have expired during the requested one week's continuance. Inconvenience and some expense would have resulted, but not expiration of the statutory time. We need not, therefore, discuss the possibility that "good cause" would have allowed trial after 60 days under section 1382.

After the empaneling of the jury, Augusta and Donelson, represented by Mr. Burstein, moved to change their pleas and, with the permission of the court, pleaded guilty not only to the assault charges but to the charge of armed robbery, upon which appellant was about to go to trial.

The second occasion on which Mr. Burstein asked to be relieved was on the third day of trial. He reiterated that the matter was one basically of conflict of interest between the representation of appellant and some of the other defendants who had been before the court. There was a conflict between appellant and counsel on the matter of witnesses to be called on his behalf. Although there was a difference between counsel and client which involved matters of trial tactics, there was also, according to counsel's statement, a basic conflict amounting to much more than divergence of opinions on strategy. Counsel stated that this was a conflict of interest among his

clients. He did not, and probably could not because of his obligation of secrecy, give any details. The judge asked appellant, Joe Perry, if he would be able to defend himself and he replied that he would not. However, he said that he did not care whether Burstein were relieved as his counsel. The court asked appellant if he were prepared to question himself the witnesses whom Mr. Burstein did not believe should be called. Appellant stated that he would not be able to argue the case to the jury. The court assigned Mr. Burstein to act as an advisory counsel for the rest of the trial, but authorized defendant to conduct his own defense. Appellant took his seat at the counsel table with Mr. Burstein. He cross-examined one witness and called as witnesses and examined three who had admitted participation in the robbery: Augusta, Donelson, and appellant's brother, Johnny Perry, who, because of his age, had been certified to the juvenile court.

*Appellant's right to separate counsel*

The applicable principles of law are:

1. The accused has an absolute right to counsel, not only under the Constitution of California (art. I, § 13), but also, since the overruling of *Betts* v. *Brady,* 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595], by *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], by the Sixth Amendment to the Constitution of the United States.

2. The guarantee of counsel contemplates that the lawyer's assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. (*Glasser* v. *United States,* 315 U.S. 60, 70 [62 S.Ct. 457, 86 L.Ed. 680]; *People* v. *Lanigan,* 22 Cal.2d 569, 576 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Douglas,* 61 Cal.2d 430, 438 [38 Cal.Rptr. 884, 392 P.2d 964].)

3. It is not necessary for an appellant whose counsel at trial had announced to the court the existence of a conflict of interest between two or more of the defendants whom he represented, to demonstrate to the appellate court the factual conflict. (*People* v. *Robinson,* 42 Cal.2d 741, 748 [269 P.2d 6]; *People* v. *Douglas, supra,* p. 438; *People* v. *Donohoe,* 200 Cal. App.2d 17, 29 [19 Cal.Rptr. 454].)

4. Innumerable intangible factors exist in most cases of this kind which may diminish the lawyer's effectiveness by reason of the dual representation or even interfere with his obligation of undivided loyalty. (See *People* v. *Kerfoot,* 184 Cal.App.2d 622, 637 [7 Cal.Rptr. 674].)

■ 5. It must be that in many cases it becomes impossible for the lawyer to explain the conflict of interest because he cannot divulge the secrets of his clients. (See *People* v. *Kerfoot, supra,* p. 644.)

■ Although appellant does not have the burden of showing the manner in which a conflict of interest may have lessened the effectiveness of his counsel, there are several ways which come to mind. We list some of these because the case differs from those cited above, in that it is the only one in which appellant's codefendants had taken themselves out of their original role by their pleas of guilty. There remains no problem about their testifying to help themselves while injuring appellant's defense; their testimony uniformly purported (if it were believed) to exculpate him. The ways in which prejudice may have resulted are:

1. It may be that the other defendants represented by Mr. Burstein had given him accounts of the crimes, prior to their pleas of guilty, which did not correspond with the testimony which appellant wished them to give. Burstein would not be able to communicate this to the judge because of his obligation of secrecy. Not only did he have the lawyer's obligation to refrain from presenting testimony known to him to be false, but he also had the duty of protecting Augusta and Donelson from untoward effect if their testimony should prove offensive to the judge. At the time they testified, their causes were pending before the probation officer for presentence report. Although, by the very nature of things, we cannot be well informed of the conflict which Mr. Burstein announced, we cannot say that considerations such as those mentioned in this paragraph did not diminish counsel's effectiveness during the trial, and particularly during argument to the jury.

2. Indeed, he did not carry on the direct examination of Augusta and Donelson. This had to be done by defendant himself, although other parts of the trial were handled by counsel. An unwillingness of the attorney to elicit the testimony of his clients may have become evident to the jury.

3. Throughout the trial the jury knew that Burstein represented two men, Augusta and Donelson, whom he had been ready to defend although by their pleas they showed themselves to be guilty. Even when these two were testifying, the court addressed questions to Burstein as their counsel. It was necessary for Burstein to take the position, impliedly, that although two of the men he had been about to defend and had represented even through *voir dire* were guilty, the third, appellant, was not.

4. When Augusta, during the course of his testimony, displayed reluctance to go farther, the judge told him that *Mr. Perry* had seen fit to call him as a witness. The fact that the lawyer was not taking a wholehearted participation in the presentation of the testimony was thereby accentuated.

5. Augusta and Donelson were each warned by the court before they began their testimony that falsehood would constitute the crime of perjury. This was done in the presence of the jury. If they had been represented by separate counsel, counsel might have given this warning privately.

Besides the above, there is the personal handicap to a lawyer who, having endeavored conscientiously to free himself of the entanglement of double representation, may have to defend with guarded advocacy an accused who is entitled to counsel's single and undiluted loyalty.

Respondent argues that the request for appointment of separate counsel was not timely made, and that appellant "was merely continuing his disruptive delaying tactics." But this argument overlooks the fact that the announcement of the conflict was made by counsel, who advanced it as his own personal reason for withdrawal; and although appellant concurred in the request, it remained the request of counsel, against whom no suggestion of bad faith has been made. Respondent cites the cases of *People* v. *Kroeger,* 61 Cal.2d 236 [37 Cal.Rptr. 593, 390 P.2d 369], *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], *People* v. *Rogers,* 207 Cal.App.2d 261 [24 Cal.Rptr. 341], and *People* v. *Sprinkle,* 201 Cal.App.2d 277 [19 Cal.Rptr. 804] ; but in the opinion in each of these cases it was pointed out that although separate counsel had been demanded, there had been no assertion of conflict of interest. As explained above, ample time even within the ordinary statutory limit remained. There is no evidence that appellant protested the conflict to his lawyer at the last moment, or, indeed, that he, rather than the lawyer, was the first to make the assertion.

Respondent argues that the second request for relief was because of difference of opinion on the tactics of the trial. This was one reason; the other, conflict of interest, was announced as the basic one. Appellant's response to the court's question at this second request can by no means be considered a waiver. (*People* v. *Douglas,* 61 Cal.2d 430, 434, 435 [38 Cal.Rptr. 884, 392 P.2d 964].)

Judgment reversed.

Draper, P. J., and Salsman, J., concurred.